780 So.2d 1048 (2000)
Robert Weldon RUSSELL, III
v.
Reggie GOLDSBY and John J. Dahmer.
No. 2000-C-2595.
Supreme Court of Louisiana.
September 22, 2000.
Concurring Opinion September 25, 2000.
Rehearing Denied October 4, 2000.
*1049 Richard A. Schwartz, Amite, Counsel for Applicant.
Joe Arthur Sims, Walter Richard House, Jr., Counsel for Respondent.
Concurring Opinion of Justice Lemmon, September 25, 2000.
PER CURIAM.
At issue in this election matter is whether plaintiff has met his burden of proving that defendant, a candidate for the office of mayor of a municipality, Amite City, failed to satisfy the requirement that he be domiciled and actually reside in the municipality for at least the year immediately preceding qualification for the office. For the reasons assigned, we conclude plaintiff failed to meet his burden of proof.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Robert Weldon Russell, a duly qualified elector in the Town of Amite City (hereinafter referred to as "Amite"), filed the instant suit seeking to disqualify Dr. Reggie Goldsby as a candidate for mayor of Amite in the election scheduled for October 7, 2000.[1] Plaintiff alleged that Dr. Goldsby does not meet the requirements for the office of mayor as set forth in La. R.S. 33:384[2] because he was not domiciled *1050 and did not actually reside in Amite during the year prior to qualifying for election.
A hearing was conducted before the trial court. Dr. Goldsby testified that he is a physician who has served as mayor of Amite since 1984. He stated he lives at 211 Division Street, which is within the city limits of Amite. He maintains his medical office on Walnut Street in Amite. Since 1972, he has owned a "camp" on Goldsby Lane, which is outside the town limits, where he stays on weekends and during the summer months.
Dr. Goldsby testified that his schedule as a physician demands flexible living arrangements. Depending upon his schedule, Dr. Goldsby stated he prepares meals, eats, naps, and occasionally entertains at the Division Street house. He admitted that he has spent less time at the Division Street house since he was married in 1998, because his wife refuses to sleep at the Division Street house. However, Dr. Goldsby testified he stayed overnight at Division Street within "the last few weeks" prior to the hearing in this matter.[3] While most of his clothing is kept at the Goldsby Lane house, he keeps toiletries and changes of clothing at the Division Street house. Dr. Goldsby testified that he has never qualified for election using an address other than Division Street, and that he never intended to change his domicile or residence from Division Street.
Evidence was also introduced indicating Dr. Goldsby and his brother claim a homestead exemption on the Division Street property, which they own jointly. The brothers also share the responsibility of paying the utilities for the Division Street house. The telephone book listing for Dr. Goldsby shows the Goldsby Lane address, but testimony established that the telephone rings at both the Goldsby Lane and Division Street houses. Dr. Goldsby maintains a homeowners insurance policy on the Goldsby Lane house, and a fire and contents policy on the Division Street house. A room in the eight-room Division Street house is currently occupied by Larry Olshove, who pays no rent but looks after the property for Dr. Goldsby and his brother. Dr. Goldsby's driver's license reflects the Division Street address.
Plaintiff produced the testimony of Amite Police Lieutenant Robert Farris, who stated that during his night patrols over the last few years, he has not seen Dr. Goldsby or any of his vehicles at the Division Street house. However, Lieutenant Farris testified that he has seen the doctor coming into town early in the morning from the direction of Goldsby Lane. Amite Police Officer Clint Baham testified that he has seen Dr. Goldsby at the Division Street house during his daytime patrols only infrequently within the last several years.
By contrast, Amite policeman Paul Britton testified that he has seen Dr. Goldsby at the Division Street house on numerous occasions. Amite Fire Chief Bruce Cutrer testified that he has seen Dr. Goldsby at the Division street house, but could not recall if he had seen him there within the last year.
At the conclusion of the trial, the trial court ruled in favor of Dr. Goldsby. While the trial court recognized that Dr. Goldsby has several residences, it found plaintiff failed to establish that Dr. Goldsby was not domiciled or actually residing at the Division Street address. Therefore, the court dismissed plaintiff's suit and found Dr. Goldsby qualified as a candidate for mayor of Amite.
Plaintiff appealed. In a split decision, three judges of a five-judge panel of the court of appeal reversed the judgment of the trial court and rendered judgment in favor of plaintiff, declaring that Dr. Goldsby *1051 does not meet the qualifications to be a candidate for mayor.[4]
Upon Dr. Goldsby's application, we granted certiorari to consider the correctness of that judgment.[5] Because of the expedited nature of these proceedings, we issued our decree shortly after oral argument, reversing the judgment of the court of appeal and reinstating the judgment of the trial court. We now provide the following reasons for our ruling.

DISCUSSION
In an election contest, the person objecting to the candidacy bears the burden of proving the candidate is disqualified. La. R.S. 18:492; Messer v. London, 438 So.2d 546 (La.1983). The laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy. Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. Dixon v. Hughes, 587 So.2d 679 (La.1991).
The statute governing the qualifications for mayor of a municipality, La. R.S. 33:384, provides as follows:
The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.
As there is no dispute that Dr. Goldsby is an elector of Amite,[6] we focus on the question of whether plaintiff established Dr. Goldsby was not domiciled in Amite for at least the year preceding qualification and whether he established Dr. Goldsby did not actually reside in Amite for at least the year preceding qualification.
Turning to the issue of domicile first, we note it is well settled that residence and domicile are not synonymous, and a person can have several residences, but only one domicile. La. Civ.Code art. 38; Messer, 438 So.2d at 547; Autin v. Terrebonne, 612 So.2d 107 (La.App. 1st Cir.1992). A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain. The question of domicile is one of intention as well as fact, and where it appears domicile has been acquired in another place, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed by positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. Pattan v. Fields, 95-1936 (La.App. 1st Cir.1995), 669 So.2d 1233. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile. Messer, 438 So.2d at 547; Herpin v. Boudreaux, 98-306 (La.App. 3d Cir.3/5/98), 709 So.2d 269, writ denied, 98-0578 (La.3/11/98), 712 So.2d 859.
In the instant case, the evidence indicates Dr. Goldsby's domicile is 211 Division Street. The record establishes that Dr. Goldsby has lived much of his life at the Division Street address, and he has always considered it to be his domicile. While it is true Dr. Goldsby has also resided at the Goldsby Lane house, plaintiff produced no evidence indicating Dr. Goldsby intended to abandon his domicile at the Division Street house in favor of the Goldsby Lane house. In fact, Dr. Goldsby explicitly testified he did not intend to change his domicile from the Division Street address. Accordingly, we find plaintiff failed to prove Dr. Goldsby *1052 changed his domicile to a location outside the city limits of Amite.
We next look to the question of whether plaintiff proved Dr. Goldsby had not "actually resided" at the Division Street address for the year immediately preceding his qualification as a candidate for mayor. While this court has not previously interpreted the phrase "actually resided," as used in La. R.S. 33:384, we have considered the phrase "actually domiciled," as used in La. Const. art. III, § 4(A) in connection with the qualifications of candidates for the legislature. We concluded that the phrase "actually domiciled" required that the person seeking to hold legislative office must have a "real rather than fictitious domicile in the area represented." Messer, 438 So.2d at 547; see also Herpin, 98-306 at pp. 2-3, 709 So.2d at 270-71 (citing Bradley v. Theus, 28,714 (La.App.2d Cir.2/20/96), 668 So.2d 1304, writ denied, 96-0469 (La.2/26/96), 668 So.2d 355). Because La. R.S. 33:384 uses the word "actually" in a virtually identical context (though referring to residence rather than domicile), the inquiry before us is whether plaintiff established that Dr. Goldsby's Division Street residence is a fictitious residence rather than a real residence.
The record establishes that Dr. Goldsby eats, naps, and entertains at the Division Street address. Moreover, Dr. Goldsby sleeps overnight at the Division Street house on occasion. He keeps changes of clothing and toiletry items at the Division Street house, claims a homestead exemption on this property, receives mail at the Division Street address, and uses this address on his driver's license. All these factors show Dr. Goldsby has significant connections to the Division Street address, and that his residency at this address is real rather than fictitious.
We recognize that Dr. Goldsby does not spend the majority of his nights at the Division Street address. However, there is no evidence that Dr. Goldsby intended to abandon Division Street as his actual residence merely because he spent less time there. Courts must be cognizant of the realities of modern life, in which the demands of a career and other factors often require people to spend a large amount of time at different locations. Nothing in La. R.S. 33:384 prohibits a candidate from having more than one actual residence; rather, the statute focuses on whether the residence within the municipality is in fact an actual residencei.e., a real residence, not a fictitious residence simply designed to circumvent the residency requirements. The record in this case demonstrates conclusively that plaintiff has failed to show Dr. Goldsby's Division Street residence is merely a fictitious residence.
In sum, the record supports the trial court's conclusion that plaintiff failed to prove Dr. Goldsby did not meet the qualifications to be a candidate for mayor of Amite. The court of appeal erred in reversing this judgment. Accordingly, we must reverse the judgment of the court of appeal and reinstate the judgment of the trial court.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court, dismissing plaintiffs suit and declaring that Dr. Reggie Goldsby meets the qualifications to be a candidate for mayor of Amite City, is reinstated. All costs in this court are assessed to plaintiff.
REVERSED; CANDIDACY REINSTATED.
LEMMON, J., concurs and will assign reasons.
VICTORY, J, dissents and assigns reasons.
VICTORY, J. (dissenting).
The evidence in this case is overwhelming that Dr. Goldsby did not "actually reside" in Amite for the year preceding his *1053 qualification to run for mayor of the city as required by La. R.S. 33:384. Although Dr. Goldsby has listed property he owns on Division Street as his municipal residence, his caretaker who lives on the property did not see him there for at least nine months prior to the time for qualification of candidates for mayor. Dr. Goldsby has acknowledged that he did not spend the night there for several months prior to qualifying. Moreover, his wife has never spent one night at the Division Street property, but lives with Dr. Goldsby on Goldsby Lane outside the city limits of Amite in a large residence for which the couple maintains homeowners' insurance. In my view, based on the evidence adduced at the trial of this matter, the trial judge manifestly erred in concluding that the Division Street property constituted an "actual residence" of Dr. Goldsby within the municipality of Amite for the year immediately preceding his qualification to run for office. Any presumptions regarding his "actual residence" were overcome by the evidence. Accordingly, I respectfully dissent.
LEMMON, J., Concurring.
As to whether Dr. Goldsby met the requirements of an actual residence at 211 Division Street in Amite, plaintiff's two principal contentions, in essence, are that (1) a person cannot have more than one actual residence and (2) if Dr. Goldsby at one time had an actual residence at 211 Division Street, it was not an actual residence during the one-period preceding his qualification for office.
The record establishes that Dr. Goldsby had an actual residence at 211 Division Street for many years. I agree with the majority that a person can have more than one actual residence.[1] I add the Division Street residence did not lose its status as an actual residence because Dr. Goldsby spent less time and fewer nights there after 1998 and during the one-year period preceding this qualification for office. On this record viewed in the light most favorable to the party who prevailed in the trial court, Dr. Goldsby did not completely give up or abandon 211 Division Street as an actual residence.
NOTES
[1] Jonathan Foster brought a separate suit on the same grounds, and the two cases were consolidated for hearing. The district court's judgment dismisses both suits, but only Russell appealed. Accordingly, only Russell's suit is before us.
[2] La. R.S. 33:384 provides:

The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.
[3] Dr. Goldsby also spends one night a week at the Amite hospital when he is on call, and frequently spends the night at a hotel in Baton Rouge when he teaches there.
[4] Russell v. Goldsby, 00-2006 (La.App. 1st Cir. 9/6/00) (not designated for publication).
[5] Russell v. Goldsby, 00-2595 (La.9/11/00), 766 So.2d 1288.
[6] Voter registration records introduced into evidence show Dr. Goldsby's address is located at 211 Division St. and 307 Walnut Street, which are both within the city limits.
[1] I further agree that the statutorily required actual residence is one that is not a fictitious residence, such as an office in which the candidate keeps a bed and some clothes.