Judgment rendered August 13, 2024.

No. 56,064-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JON MARK CROUCH, SR.                    Plaintiff

versus

STEVEN MICHAEL COLLIER &                Defendants
JILL SESSIONS

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. C-173,630

Honorable Charles A. Smith, Judge

* * * * *

LAW OFFICES OF PHILIP B. ADAMS, LLC      Counsel for Plaintiff-
By: Philip B. Adams                      Appellant

RYAN E. GATTI, ATTORNEY AT LAW           Counsel for Defendant-
By: Ryan E. Gatti                        Appellee,
    Rachel D. Wortham                    Steven Michael Collier
    Stephen D. Cox

KELLY L. LONG

ANDREW C. JACOBS                         Counsel for Defendant,
                                         Jill Sessions

* * * * *

Before STONE, STEPHENS, THOMPSON,
ROBINSON, and HUNTER, JJ.

**STEPHENS, J.**

This election suit arises out of the Twenty-Sixth Judicial District Court for the Parish of Bossier, State of Louisiana, the Honorable Charles A. Smith, Judge, presiding. Plaintiff, Jon Mark Crouch, Sr., appeals from the trial court's judgment denying his objection to the candidacy of defendant, Steven Michael Collier, for the office of Chief of Police for the Town of Benton, Louisiana. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On July 17, 2024, Collier qualified as a candidate for the office of Chief of Police for the Town of Benton seeking re-election. On the Notice of Candidacy form filed with the Bossier Parish Clerk of Court, Collier certified that his domicile address was 914 Lee Street, Benton, Louisiana 71006.

On July 23, 2024, Crouch, who also qualified to run for Chief of Police,[1] filed a petition to disqualify Collier on the grounds that he did not meet the one-year domicile requirement of La. R.S. 33:385.1, as Collier had been domiciled at 5016 Westrilee Drive, Benton, Louisiana, 71006, for more than 12 years.[2]

The four-day trial began on July 26, 2024, and ended on July 31, 2024. Testimony and documentary evidence relating to three addresses were presented:

---

[1] Collier defeated Crouch in the 2020 election.

[2] Jill Sessions, the Bossier Parish Clerk of Court, was also named as a defendant in this matter, in accordance with La. R.S. 18:1402.

- 5016 Westrilee Drive is owned by Collier. This house, a 3,649 square foot house in Water's Edge Subdivision near Cypress Bayou/White Oak Bayou, was purchased by Collier in 2012 for around $330,000.00. The house has four bedrooms and four and a half bathrooms. Collier claimed a homestead exemption on the property from its date of purchase to 2019, but he did not claim the homestead exemption for 2020 through 2024. The water and electricity bills for this address are in Collier's name.

- 710 5th Street is owned by Collier's wife's parents, Richard, who is now deceased, and Carole Sullivant. This is the address listed on Collier's 2020 Notice of Candidacy. In June 2019, Collier changed his driver's license and registered to vote at the 5th Street address. The Sullivants claim a homestead exemption on this property. The electricity bill is in the Sullivants' name and from January 2022 to August 2024, the water bill has been in Collier's name.

- 914 Lee Street was purchased by Collier's father and stepmother, Rodney and Sarah Collier, in January 2023. This property has on its premises a 910 square foot house with two bedrooms and one bathroom as well as a garage apartment, and three storage buildings. This is the address listed on Collier's 2024 Notice of Candidacy. In June 2024, Collier changed his driver's license and voter registration address to 914 Lee Street. Rodney and Sarah Collier do not claim a homestead exemption on this address. The electricity bill is in Sarah Collier's name and from April 2024 to August 2024, the water bill has been in Steven Collier's name.

710 5th Street and 914 Lee Street are within the municipal limits of the Town of Benton. 5016 Westrilee Drive, although a Benton address, is outside of the municipal limits of the Town of Benton.

Stephanie Sullivant Collier, Steven Collier's wife, who is the Chief Administrative Officer for the Town of Benton, testified that she has lived at 5016 Westrilee Drive since 2012, but that Collier lives at the 914 Lee Street address. Stephanie stated that Collier moved into her mother's house at 710 5th Street in 2019 to help care for her mother, who has dementia. Stephanie identified State Farm Insurance auto renewal paperwork containing her and Collier's name and the Lee Street address. That document appears to have been mailed to Collier at the Lee Street address on July 4, 2024. Stephanie also identified her and Collier's joint tax returns for the years 2019 to 2023,

which all contain the 710 5th Street address. Stephanie admitted that Collier spends time at 5016 Westrilee Drive, but testified that the majority of his time is spent in the Town of Benton.

Rodney and Sarah Collier testified that they purchased the Lee Street property to remodel the house for Steven Collier to live in because "his living conditions with Carole (at the 5th Street house) were not good." They stated that the renovations (at the Lee Street house) are 95% complete, and that Steven now resides at that house. There is also a garage apartment on that property that they had plans to remodel and rent. However, they both admitted that they never rented the garage apartment, nor did they charge Steven Collier rent. Rodney testified that he believed his son Steven established his primary residence at 914 Lee Street in June 2024, but would frequently stop by the house in the months before that to check on the progress. Documents were introduced showing that Rodney and Sarah obtained homeowner's insurance on the Lee Street property wherein they stated that the house was "vacant/unoccupied" for the policy period from January 20, 2023, to January 20, 2024. Also, invoices for electrical, plumbing, and air conditioning repairs were introduced, one of which included a description of "Collier Rent House/Garage Apartment."

Steven Collier testified that his current domicile is 914 Lee Street. He admitted that he never paid property taxes or rent for 710 5th Street or 914 Lee Street, but the water bills are in his name. Collier testified that his wife, son, and stepdaughter live at 5016 Westrilee Drive. Collier testified that as the Chief of Police, he works Monday through Friday, typically from 8:00 a.m. to 4:00 p.m. As to his Tier 3 Personal Financial Disclosure Statements, the 2023 report, filed on June 17, 2024, does not list an address, but the

3

reports from 2019 through 2022 show 710 5th Street as his mailing address. Also, Collier's Campaign Finance Report filed on January 24, 2023, lists the 710 5th Street address. Collier identified his bank records from Home Federal Bank and First National Bank of Benton; from January 2023 to March 2024, the records contain the 710 5th Street address and from April 2024 to June 2024, the records contain the 914 Lee Street address. Several documents from 2014 to 2017 were introduced which include the 5016 Westrilee Drive address, including the registration for his commercial trailer, a service return on a summons, an annual report for Collier & Reasor Investments, Inc., and a petition for divorce. Collier also admitted that he registered his stepdaughter's car, a 2015 Mazda, at 5016 Westrilee Drive on October 2, 2023, and that in the annual report for Collier Boys Striping, LLC, filed on March 15, 2024, his address is listed as 5016 Westrilee Drive.

There was also testimony from the neighbors at the relevant addresses. Stephen and Laura Seachord, who have lived at 902 Lee Street for 12 years, provided no relevant information as to the 914 Lee Street address as they both testified that they do not pay much attention to that house.

Troy and Allie Keith, who live at 714 5th Street, testified that they live next door to Carole Sullivant. Allie stated that she has often seen Collier's police unit at 710 5th Street, including overnight, and that she knows that Collier lived there for a while based on statements made by Carole. Similarly, Troy testified that he believed that Collier was living at 710 5th Street at some point.

John and Cara Carrier live at 5020 Westrilee Drive, which is next door to 5016 Westrilee Drive. John testified that he believes that Collier

lives at 5016 Westrilee Drive part-time because "he's hardly ever there" and his police vehicle is not usually there overnight. Cara testified that she has seen Collier coming and going from 5016 Westrilee Drive, but has no idea where he lives.

Lorraine Ragsdale, a barber, school bus driver, and Justice of the Peace in Benton, testified that around the time of the 2020 election, Collier told her that he was living with his mother-in-law, Carole Sullivant. She stated that as a bus driver, she frequently drives by 914 Lee Street and 710 5th Street, and she has never seen Collier's police vehicle at either location.

Jon Crouch, the plaintiff, testified that in his recent capacity as a Code Enforcement Officer for the Town of Benton, he frequently drives by the relevant addresses, and he has never seen any indications of occupancy at 914 Lee Street. Likewise, he has never seen Collier at 710 5th Street. However, Crouch did admit that he recently noticed the window units on in the garage apartment of the Lee Street property. Also, Crouch identified a photograph he took on July 22, 2024, depicting Collier's police vehicle under the carport at 914 Lee Street.

GPS data from Collier's police laptop was analyzed by Dr. Robert Parker, a statistician. The data provided covers the period from April 26, 2024, to July 23, 2024, but it contained *relevant* data for only 39 distinct days over the 88-day period. Although this Court has concerns about whether the data was properly authenticated, Collier testified that when he logs into the CAD system with the Bossier Parish Sheriff's Department on his laptop, which is usually in his police vehicle, his location is tracked by GPS. Using the coordinates he was provided, Dr. Parker analyzed the start and end points for each day in relation to the three relevant addresses and the

5

Benton Police Department. The days generally begin around 8:00 a.m. and end around 3:00 p.m. to 4:00 p.m. On 33 of the 39 days for which GPS data was provided, the GPS signal started at or near 5016 Westrilee Drive; on 36 days, the GPS signal ended at or near 5016 Westrilee Drive.

Robert Fant, a private investigator, testified as to his surveillance of the three relevant addresses on July 20, 2024, the Saturday morning after qualifying ended, around 9:00 a.m. to 10:30 a.m. Fant took photographs at each address. No vehicles were present at 914 Lee Street, and only one vehicle, belonging to Carole Sullivant, was present at 710 5th Street. As to the 5th Street house, Fant noted that bushes covered the entire front yard, so he had to slow down to see the driveway. There were four vehicles in the driveway at 5016 Westrilee Drive, including Collier's police vehicle. Fant also testified that he had conducted surveillance a week prior but did not see any vehicles at any of the addresses.

At the conclusion of the testimony, the trial court requested post-trial briefs and took the matter under advisement. Crouch argued that Collier should be disqualified as a candidate for Chief of Police because considering the totality of the circumstances, Collier's true domicile is 5016 Westrilee Drive. Crouch asserted that since 2012, Collier has consistently used 5016 Westrilee Drive as his primary, long-term residence for official purposes, and Collier's claims of residence within the municipal limits of Benton suggest a deliberate attempt to meet the legal requirements for candidacy, not a genuine change in domicile. Crouch argued that despite Collier's actions demonstrating an intent to be regarded as domiciled in Benton, he continues to have significant ties to 5016 Westrilee Drive and failed to provide any testimony or documentation that he actually resided at any

6

address within the municipal limits. Further, Crouch claimed that it is implausible that a 54-year-old man would choose to reside in a much smaller, less valuable property owned by his parents or in-laws when he owns a spacious, valuable home where his wife and children reside.

On the other hand, Collier argued that Crouch failed to meet his burden of establishing a *prima facie* case that he should be disqualified. Collier asserted that the documentary evidence, including his Notice of Candidacy form, voter registration, driver's license, water and electricity bills, homestead exemption status, financial disclosures, and tax returns, shows that in the years prior to the date of qualification, he took the steps necessary to establish his domicile within the municipal limits of Benton to support his candidacy for Chief of Police.

On August 6, 2024, the trial court issued a written opinion and judgment, finding that Collier met the requirements to qualify as a candidate for Chief of Police. The trial court specifically found that Collier was domiciled at 5016 Westrilee Drive until 2019, when he changed his domicile to 710 5th Street, which he maintained until he again changed his domicile to 914 Lee Street in 2024, as evidenced by the testimony of witnesses as well as the documents, including Collier's driver's license and voter registration. The trial court noted that the fact that Collier gave up his homestead exemption on the Westrilee Drive house, requiring him to pay additional taxes on that property, clearly indicates an intent to no longer be domiciled at 5016 Westrilee Drive. Therefore, the trial court determined that since 2019, Collier has maintained his domicile within the municipal limits of the Town of Benton.

In reaching this determination, the trial court specifically found that the testimony of Fant, the private investigator, and Dr. Parker was of no benefit. As to the GPS evidence from the laptop in Collier's police vehicle, which is only acquired when he logs into the system, the trial court noted that such evidence merely showed when Collier began and ended work on particular days. The trial court also discounted the testimony of Stephen and Laura Seachord, as they stated that they did not pay attention to the house at 914 Lee Street, and Lorraine Ragsdale, based on the times of day she was driving by the relevant addresses. This appeal ensued.

## DISCUSSION

On appeal, Crouch contends that the trial court's judgment that Collier met the one-year domicile requirement for candidacy for the office of Chief of Police was clearly wrong. Crouch asserts that the trial court erroneously evaluated the evidence by overemphasizing Collier's changes to his driver's license, voter registration and homestead exemption status, while disregarding substantial contrary evidence of actual residence, including the GPS data, utility records, business filings, and witness testimony.

Collier argues that the trial court did not err in finding that he met the qualification requirements to be a candidate in the 2024 Town of Benton Chief of Police election. According to Collier, the trial court's factual findings that he established a domicile in the municipality of Benton in 2019 which he thereafter maintained are not manifestly erroneous and thus should be affirmed by this Court.

*Law*

There is nothing more fundamental to our society than the ability of an electorate to choose its leaders. The purpose of the election process is to

8

provide the electorate with a wide choice of candidates.  *Becker v. Dean*, 03-2493, p. 6 (La. 9/18/03), 854 So. 2d 864, 869; *Williams v. Ragland*, 567 So. 2d 63 (La. 1990).  Because encouraging qualification is an integral component of the process, laws regulating the process must be interpreted with this purpose in mind.  *Becker*, 03-2493, pp. 6-7, 854 So. 2d at 869; *Williams*, 567 So. 2d at 66.  Thus, the interests of the state and its citizens are best served when election laws are interpreted so as to give the electorate the widest possible choice of candidates.  *Id.*

A challenge to the candidacy of a person may be based on the grounds that the candidate "does not meet the qualifications for the office he seeks in the primary election."  La. R.S. 18:492(A)(3).  A person objecting to candidacy bears the burden of proving that the candidate is disqualified.  *Landiak v. Richmond*, 05-0758 (La. 3/24/05), 899 So. 2d 535; *Russell v. Goldsby*, 00-2595 (La. 9/22/00), 780 So. 2d 1048.  Once the party bearing the burden of proof in an objection to candidacy case has established a *prima facie* case that the candidate is disqualified, the burden shifts to the party opposing the disqualification to rebut the showing.  *Williams v. Harrison*, 54,891 (La. App. 2 Cir. 8/5/22), 346 So. 3d 370, *writ denied*, 22-1207 (La. 8/9/22), 343 So. 3d 703.

With respect to the qualifications for the office of Chief of Police, La. R.S. 33:385.1(A) provides that "an elected chief of police of a municipality shall be an elector of the municipality" and is required to "have been domiciled for at least the immediately preceding year in the municipality" at the time of qualification as a candidate.  When the qualifications for an office include a domicile requirement, the candidate shall meet the established length of domicile as of the date of qualifying.  La. R.S. 18:451.

9

The terms "residence" and "domicile" are legal terms that are not synonymous. *Landiak, supra.* An individual's domicile is the place of his habitual residence. La. C.C. art. 38. The most significant difference between the two concepts is that a person can have several residences, but only one domicile. La. C.C. art. 39. Spouses may have either a common domicile or separate domiciles. La. C.C. art. 40. Domicile is an issue of fact that must be determined on a case-by-case basis. *Landiak*, *supra.*

Domicile is maintained until acquisition of a new domicile. An individual changes domicile when he moves his residence to another location with the intent to make that location his habitual residence. La. C.C. art. 44. The determination of an individual's intent to change his domicile must be based on the actual state of the facts, not simply on what the person declares them to be. *Landiak*, *supra.*

Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. *Id.*, 05-0758, p. 10, 899 So. 2d at 543. However, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. *Id.* Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle

10

registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. *Id.*, 05-0758, pp. 10-11, 899 So. 2d at 543-44. This list is not exhaustive or dispositive on the issue of domicile. *Gray v. Brown*, 53,265, p. 9 (La. App. 2 Cir. 8/27/19), 278 So. 3d 1104, *writ denied*, 19-0140 (La. 8/31/19), 277 So. 3d 1186. The trial court can also consider trial testimony as well as other evidence. *Id.*

A court determining whether the plaintiff objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections so as to promote rather than defeat candidacy. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Id.*, 05-0758, p. 7, 899 So. 2d at 541.

The district court's factual findings regarding domicile and residence are subject to manifest error review. *Millican v. Russell*, 54,898, p. 11 (La. App. 2 Cir. 8/9/22), 346 So. 3d 389, 397. In order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.*

*Analysis*

Based on a full review of the record, we find that the trial court was not manifestly erroneous or clearly wrong in concluding that Crouch failed to establish a *prima facie* case that Collier is disqualified for the office of

11

Chief of Police of the Town of Benton. As such, the burden of proof never shifted to Collier to present countervailing evidence.

The evidence as found by the trial court in its Reasons for Judgment established that Collier was domiciled at 5016 Westrilee Drive, outside the municipal limits of the Town of Benton prior to 2019. However, before the 2020 qualifying period, Collier took adequate steps to establish a new domicile within the municipal limits of Benton to run for the office of Chief of Police. The documentary evidence provides persuasive proof of Collier's intent to change his domicile. The testimony establishes that in 2019, Collier moved into the house on 5th Street to care for his mother-in-law. At that time, he changed the address on his driver's license and voter registration, and the water bill was subsequently established in his name. Collier used the 5th Street address to file his tax returns, on his financial disclosures and reports, and on his personal banking records.

Although the exact date is unclear, at some point in 2024, Collier began residing in the house on Lee Street owned by his parents. Collier established water service in his name in April 2024 and changed the address on his driver's license and voter registration to reflect the Lee Street address in June 2024. There are also insurance documents and personal bank records from this same time period which reflect the Lee Street address. In addition, Collier opted to forbear the homestead exemption on the Westrilee Drive address in 2020, a choice that caused him to pay additional taxes. As noted by this Court in *Cleveland v. Williams*, 49,664, pp. 6-7 (La. App. 2 Cir. 9/8/14), 148 So. 3d 229, 233, because of its cost, such a decision is an important factor in determining where a person is actually domiciled.

The testimony of the neighbors at each of the relevant addresses provided little information other than to establish Collier's physical presence at each of the houses and evidenced a division of his time between the houses. However, an individual is not prohibited from having multiple residences. Crouch failed to present any testimony or evidence as to where Collier slept overnight, enjoyed meals, took showers, or kept his clothing and other personal belongings. The fact that the houses at 5th Street and Lee Street are substantially smaller and less valuable than the house on Westrilee Drive does not prove that Collier did not reside at those houses. Further, although Collier's wife and children reside at the Westrilee Drive house, the Louisiana Supreme Court has acknowledged that courts must be cognizant of the realities of modern life, in which the demands of a career and other factors often require people to spend a large amount of time at different locations. *Becker*, 03-2493, pp. 12-13, 854 So. 3d at 872; *Russell*, 00-2595, p. 7, 780 So. 2d at 1052.

Documentation of electricity and water bills for 710 5th Street show regular usage for the periods covered by those records from 2022 to 2024, although there was a history of late payments for both the electricity and water bills, which resulted in the electricity being disconnected from February 27, 2024, to April 15, 2024. No testimony was introduced to explain the situation at 5th Street, other than Sarah Collier's testimony that Steven Collier's living conditions at that house "were not good," which presumably prompted his move to Lee Street. The utility records for 914 Lee Street demonstrate sporadic but increasing use of electricity and water at that house for the relevant period in 2024. The evidence in the record does not prove the usage to be inconsistent with habitation of the house.

13

Although Crouch argues that the timing of the changes in domicile in the documentary evidence is suspect, a person may change his domicile in order to qualify for a political office so long as that change is genuine and a change in fact, not a fiction to avoid the domicile requirement for qualification. *Cleveland*, *supra*. Considering that the election law favors candidacy and the deference accorded to the trial court in factual determinations, we find no manifest error in the trial court's determination that Collier has maintained his domicile within the municipal limits of the Town of Benton since 2019.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court. Costs of this appeal are assessed to the plaintiff, Jon Mark Crouch, Sr.

**AFFIRMED.**